UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TODD FENER, | ) | No. 04-cv-12375-RCL |
| | ) | |
| Plaintiff, | ) | CLASS ACTION |
| | ) | |
| vs. | ) | |
| | ) | |
| ASPEN TECHNOLOGY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| RICK STOCKMASTER, Individually and On Behalf of All Others Similarly Situated, | ) | No. 04-cv-12387-RCL |
| | ) | |
| | ) | CLASS ACTION |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ASPEN TECHNOLOGY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF LAW IN SUPPORT OF THE OPERATING ENGINEERS CONSTRUCTION INDUSTRY AND MISCELLANEOUS PENSION FUND (LOCAL 66) AND CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD AND LIAISON COUNSEL

Operating Engineers Construction Industry and Miscellaneous Pension Fund (Local 66) and City of Roseville Employees' Retirement System (the "Operating Engineers Group") respectfully submit this Memorandum of Points and Authorities in support of their Motion for consolidation, appointment as lead plaintiff and for approval of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") as lead counsel and Shapiro Haber & Urmy LLP ("Shapiro Haber") as liaison counsel pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

**I.   INTRODUCTION**

Presently pending in this District are two related class action lawsuits (the "Actions") on behalf of persons who purchased or otherwise acquired the securities of Aspen Technologies, Inc. ("Aspen" or the "Company") between January 25, 2000 and October 29, 2004 (the "Class Period").[1] These Actions are brought pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The Exchange Act, as amended by the PSLRA, first instructs the Court to consolidate the related actions pending in this District *before* appointing a lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(ii). As soon as practicable after consolidation, the Court is instructed to appoint as lead plaintiff the person or "group of persons" with the largest financial interest in the relief sought in this litigation that otherwise satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See* 15 U.S.C. §78u-4(a)(3)(B). Here, the Operating Engineers Group should be appointed lead

---

[1]   The Actions are *Fener v. Aspen Technology, Inc.*, Case No. 04cv12375 (RCL) (D. Mass. Nov. 9, 2004), and *Stockmaster v. Aspen Technology, Inc.*, Case No. 04cv12387 (D. Mass. Nov. 10, 2004).

- 1 -

plaintiff because it purchased 101,800 shares of Aspen stock, lost over $1.2 million in connection therewith and otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *Greebel v. FTP Software*, 939 F. Supp. 57, 64-65 (D. Mass. 1996) (appointing a group of three individuals with the largest loss as lead plaintiff); *see also* Affidavit of Theodore M. Hess-Mahan in Support of the Operating Engineers Construction Industry and Miscellaneous Pension Fund (Local 66) and City of Roseville Employees' Retirement System's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead and Liaison Counsel ("Hess-Mahan Aff."), Ex. A.

In addition, the Operating Engineers Group's selection of Lerach Coughlin to serve as Lead Counsel and Shapiro Haber to serve as Liaison Counsel should be approved because Lerach Coughlin and Shapiro Haber have extensive experience in the prosecution of securities class actions such as this and will vigorously represent the interests of the class. *See* Hess-Mahan Aff., Exs. D & E.

## II.    STATEMENT OF FACTS

Aspen describes itself as the leading supplier of integrated software and services to the process industries, which consist of oil and gas, petroleum, chemicals, pharmaceuticals and other industries that manufacture and produce products from a chemical process. The Company develops and markets software and services to companies in the process industries.

Throughout the Class Period, defendants issued numerous positive statements and filed quarterly reports with the SEC which described the Company's increasing financial performance. These statements were materially false and misleading because they failed to disclose and misrepresented the following adverse facts, among others: (i) that the Company had improperly and prematurely recognized revenue for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002 and

- 2 -

possibly other periods; (ii) that the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition; and (iii) that as a result of the foregoing, the values of the Company's revenues, earnings, assets and/or liabilities for fiscal years 2000-2002 and possibly other periods were materially overstated and may have to be restated.

On October 27, 2004, the Company shocked the market when it issued a press release announcing that its Audit Committee had undertaken a ***detailed review of the accounting*** for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002. As a result of this shocking news, on October 28, 2004, shares of the Company's stock fell to an intraday low of $5.50 per share, or approximately 20%, before closing at $6.68 per share, on unusually heavy trading volume.

Then, on October 29, 2004, the Company announced that federal prosecutors launched a probe into the Company's accounting practices from 2000 through 2002. The Company said it received a ***subpoena*** from the U.S. Attorney's Office for the Southern District of New York requesting documents relating to transactions that it entered into during those years, and other documents dating from January 1, 1999. Subsequently, shares of the Company's stock fell an additional $0.67, or approximately 10%, to close at $6.01, on unusually heavy trading volume.

On November 24, 2004, Aspen said it would have to ***restate results*** for the fiscal years ended June 2000 through June 2004 after its Audit Committee discovered the Company ***improperly accounted*** for certain software licenses. Aspen also announced that chief executive officer David McQuillin resigned at the board's request and that the Audit Committee is continuing to investigate transactions entered into in fiscal years 2000 through 2002, and has decided to evaluate certain agreements entered into in fiscal 2003 and 2004.

### III. ARGUMENT

#### A. This Court Should Consolidate the Related Actions

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter ... has been filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). Consolidation is particularly appropriate in securities class action litigations such as this. *See Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997).

To date, the Operating Engineers Group is aware of two related actions in this District. *See* supra n.1. Both of these actions relate to the same series of false and misleading statements and arise under the Exchange Act. Therefore, consolidation is appropriate. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990).

#### B. The Operating Engineers Group Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of lead plaintiff in private actions arising under the Exchange Act that are brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. §§78u-4, *et seq*.

*First*, the plaintiff who files the initial action must publish notice within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff.[2] 15

---

[2] Notice was properly published within 20 days of the first-filed action in *Business Wire* on April 8, 2004. *See* Hess-Mahan Aff., Ex. C. The national news wire services have been recognized as suitable vehicles for meeting the statutory requirement that notice be published "'in a widely circulated national business-oriented publication or wire service.'" *Greebel*, 939 F. Supp. at 62, 64. (Unless otherwise noted, all emphasis is added and citations are omitted.)

U.S.C. §78u-4(a)(3)(A)(i). Within 60 days after publication of notice, any person *or* group of persons who are members of the proposed class may move to be appointed as lead plaintiff, whether or not they have previously filed a complaint. 15 U.S.C. §78u-4(a)(3)(A)-(B).

*Second*, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member *or members of the class* that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). Third, in determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or *group of persons* that –
>
> (aa) has either filed the complaint or made a motion in response to a notice ...;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

### C. The Operating Engineers Group Satisfies All Three of the PSLRA's Lead Plaintiff Requirements

#### 1. The Operating Engineers Group Has Timely Moved for Appointment as Lead Plaintiff

All putative class members seeking to be appointed lead plaintiff in this matter must move for that designation by January 10, 2005. 15 U.S.C. §78u-4(a)(3)(A). Here, pursuant to the PSLRA's 60-day filing requirement, the Operating Engineers Group hereby timely moves this Court to be appointed Lead Plaintiff, and has also duly signed and filed certifications stating its individual members' willingness to serve as representative parties on behalf of the class. *See* Hess-Mahan Aff., Ex. B.

### 2. The Operating Engineers Group Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period the Operating Engineers Group suffered losses of over $1.2 million based on its purchase of approximately 101,800 shares of Aspen stock at a cost of over $1.8 million. *See* Hess-Mahan Aff., Exs. A-B. Upon information and belief, the Operating Engineers Group's financial interest in this matter is the largest of any competing lead plaintiff movant. *See* 15 U.S.C. §78u-(a)(3)(B)(iii)(I).

### 3. The Operating Engineers Group Otherwise Satisfies Rule 23

Under 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), a proposed lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

Of these four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a motion for class certification motion is filed.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("'With respect to typicality under Rule 23(a)(3), plaintiffs need

not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members.'").

The Operating Engineers Group satisfies the typicality requirement of Rule 23 because, just like all other class members, it: (1) purchased Aspen securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby.  *See Priest*, 118 F.R.D. at 555.

Under Rule 23(a)(4) the representative party must also "'fairly and adequately protect the interests of the class.'"  *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).  Here, the Operating Engineers Group is an adequate representative because its interest in aggressively pursuing the claims against defendants is clearly aligned with those of the class.  *See id*.  Further, there is no antagonism between the Operating Engineers Group's interests and those of the class generally.  *Id*.  Thus, the Operating Engineers Group *prima facie* satisfy the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### 4.    The Operating Engineers Group's Selection of Lead Counsel Should be Approved

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent.  The Operating Engineers Group has selected Lerach Coughlin to serve as Lead Counsel and Shapiro Haber to serve as Liaison Counsel.  Lerach Coughlin possesses extensive experience litigating securities class actions, has successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has been appointed as lead or co-lead counsel in landmark class actions, including *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002).

## IV. CONCLUSION

For all the foregoing reasons, the Operating Engineers Group respectfully requests that the Court: (1) consolidate the related actions (2) appoint it as lead plaintiff in the consolidated actions; and (3) approve its selection of Lerach Coughlin to serve as lead counsel and Shapiro Haber as liaison counsel for the class.

DATED: January 10, 2005

Respectfully submitted,

/s/ *Theodore M. Hess-Mahan*
THEODORE M. HESS-MAHAN
Thomas G. Shapiro (BBO #454680)
Theodore M. Hess-Mahan (BBO #557109)
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA  02109
Telephone:  617/439-3939
617/439-0134 (fax)

[Proposed] Liaison Counsel

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.
200 Broadhollow Road, Suite 406
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
       - and -
WILLIAM S. LERACH
DARREN J. ROBBINS
RAMZI ABADOU
401 B Street, Suite 1600
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail on 1/10/05

/s/ *Theodore M. Hess-Mahan*

S:\CasesSD\Aspen Tech 04\BRF00017062-LP.doc