UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re ASPEN TECHNOLOGY, INC.<br>SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | ) Master File No. 04-cv-12375-RCL<br>)<br>) <u>CLASS ACTION</u><br>)<br>) LEAD PLAINTIFFS' COUNSEL'S<br>) APPLICATION FOR AN AWARD OF<br>) ATTORNEYS' FEES AND<br>) REIMBURSEMENT OF EXPENSES<br>) |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...............................................................................................................1

II.  THE REQUESTED FEE AND EXPENSE AWARD IS FAIR AND
     REASONABLE ..................................................................................................................4

     A.   The Common Fund Doctrine ..................................................................................4

     B.   The First Circuit Has Expressed a Preference for the Percentage of Fund
          Method in Awarding Fees in Common Fund Cases ................................................5

     C.   The Requested Twenty-Five Percent Fee Award Is Well Within the
          Applicable Range of Percentage of Fund Awards ...................................................7

     D.   The Fee Request Is Also Fully Justified Under the Lodestar/Multiplier
          Approach ................................................................................................................10

     E.   The Expenses Incurred by Lead Plaintiffs' Counsel Were Reasonable ................11

III. CONCLUSION .................................................................................................................12

## TABLE OF AUTHORITIES

Page

*Adams v. Standard Knitting Mills Inc.*,
    [1978 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶96,377
    (E.D. Tenn. Jan. 6, 1978) ............................................................................................... 8

*Baron v. Commercial & Indus. Bank of Memphis*,
    [1979-1980 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶97,132
    (S.D.N.Y. Oct. 3, 1979) .................................................................................................. 8

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ........................................................................................................ 4

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
    480 F. Supp. 1195 (S.D.N.Y. 1979), *aff'd*, 622 F.2d 1106 (2d Cir. 1980) ..................... 8

*Blum v. Stenson*,
    465 U.S 886 (1984) ..................................................................................................... 5, 7

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ........................................................................................................ 4

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ........................................................................................ 6

*Chalverus v. Pegasystems, Inc.*,
    No. 97-12570-WGY (D. Mass. Dec. 19, 2000) ............................................................. 7

*City Nat'l Bank v. Am. Commonwealth Fin. Corp.*,
    657 F. Supp. 817 (W.D.N.C. 1987) ............................................................................... 8

*Conley v. Sears Roebuck & Co.*,
    222 B.R. 181 (D. Mass. 1998) ..................................................................................... 11

*Cosgrove v. Sullivan*,
    759 F. Supp. 166 (S.D.N.Y. 1991) ............................................................................... 11

*Deckler v. Ionics, Inc., et al.*,
    No. 03-cv-10393-WGY (D. Mass Apr. 4, 2005) ........................................................... 7

*Florin v. NationsBank, N.A.*,
    34 F.3d 560 (7th Cir. 1994) .......................................................................................... 10

*Furtado v. Bishop*,
    635 F.2d 915 (1st Cir. 1980) .......................................................................................... 7

**Page**

*In re Ampicillin Antitrust Litig.*,
    526 F. Supp. 494 (D.D.C. 1981) ........................................................................................8

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002) ...........................................................................................9

*In re Bay Fin. Corp. Sec. Litig.*,
    No. 89-2377-WD (D. Mass. Nov. 4, 1996) ......................................................................8

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...............................................................................7, 10, 12

*In re Copley Pharm., Inc. Sec. Litig.*,
    No. 94-11897-WGY (D. Mass. Feb. 8, 1996) ...............................................................7, 8

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) ....................................................................................8

*In re Employee Benefit Plans Sec. Litig.*,
    [1993 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶97,669
    (D. Minn. Jun. 2, 1993) .....................................................................................................8

*In re Fidelity/Micron Sec. Litig.*,
    167 F.3d 735 (1st Cir. 1999) ...........................................................................................12

*In re Franklin Nat'l Bank Sec. Litig.*,
    [1980 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶97,571
    (E.D.N.Y. Jun. 24, 1980) ...................................................................................................8

*In re Gillette Sec. Litig.*,
    No. 88-1858-K (D. Mass. Mar. 30, 1994) ........................................................................8

*In re M.D.C. Holdings Sec. Litig.*,
    No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488
    (S.D. Cal. Aug. 30, 1990) .................................................................................................9

*In re Northwestern Corp. Sec. Litig.*,
    No. 03-4049 (D.S.D. Jan. 14, 2005) .................................................................................9

*In re Picturetel Corp. Sec. Litig.*,
    No. 97-12135-DPW (D. Mass. Nov. 4, 1999) ..................................................................8

**Page**

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52, 81 (D. Mass. 2005) ................................................................................10

*In re RJR Nabisco Sec. Litig.*,
    MDL No. 818, 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) .........................11

*In re RiteAid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ...............................................................................11

*In re Segue Software, Inc.*,
    No. 99-10891-RGS (D. Mass. July 31, 2001) ....................................................................7

*In re Sequoia Sys. Sec. Litig.*,
    [1993-1994 Transfer Binder], Fed. Sec. L. Rep.
    (CCH) ¶98,089 (D. Mass. Sept. 10, 1993) ..............................................................7, 11, 12

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995) ........................................................................................5, 6, 7

*In re Xcel Energy, Inc.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................................9

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964) ...........................................................................................................4

*Malanka v. de Castro*,
    No. 85-2154-MC, 1990 U.S. Dist. LEXIS 18171 (D. Mass. Nov. 20, 1990) ....................8

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................................8, 9

*Margaret Hall Found., Inc. v. Fin. Mgmt., Inc.*,
    No. 82-2543-S (D. Mass. May 9, 1989) ............................................................................8

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 679 (M.D. Ala. 1988) ...................................................................................4

*McKenzie Constr. Inc. v. Maynard*,
    758 F.2d 97 (3d Cir. 1985) .................................................................................................9

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) .....................................................................................................7, 10

**Page**

*Morton v. Kurzweil Applied Intelligence, Inc.*,
    No. 10829-REK (D. Mass. Feb. 4, 1998) ...............................................................................8

*Nilsen v. York County*,
    400 F. Supp. 2d 266 (D. Me. 2005) .........................................................................................5

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992)........................................................................................5, 11

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ...................................................................................................6

*Trustees v. Greenough*,
    105 U.S. 527 (1882).................................................................................................................4

*Weiss v. Mercedes-Benz of N. Am.*,
    899 F. Supp. 1297 (D.N.J. 1995) ...........................................................................................11

*Zeid v. Open Env't Corp.*,
    No. 96-12466-EFH (D. Mass. June 24, 1999) ........................................................................8

*Zoll Med. Corp. Sec. Litig.*,
    No. 94-11579-NG (D. Mass. Oct. 5, 1998) ............................................................................7

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 1 ........................................................................................................................................9

**SECONDARY AUTHORITIES**

Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, (1994) .............5

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees* (1985)
    108 F.R.D. 237........................................................................................................................6

Petitioners (referred to herein as "Petitioners" or "Lead Plaintiffs' Counsel") hereby respectfully submit this application for an award of attorneys' fees and reimbursement of expenses of Class Counsel.

## I.     INTRODUCTION

Petitioners are the law firms that served as counsel to Lead Plaintiffs and the Class in this action.  Through their efforts, Lead Plaintiffs' Counsel have obtained a recovery for the Class of $5,600,000 (plus interest), in a settlement embodied in the Stipulation and Agreement of Compromise, Settlement and Release of Securities Action dated as of November 16, 2005 (the "Settlement").  Petitioners respectfully seek an award of counsel fees of twenty-five percent of the Settlement Fund and reimbursement of their reasonable expenses incurred in the prosecution and settlement of this action, in the amount of $163,640.65.  In light of the risk undertaken, the work performed and the result obtained, these fees and expenses are reasonable and should be approved by the Court.

In accordance with the Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Settlement Hearing ("Preliminary Approval Order") entered by this Court on December 12, 2005, a total of 37,093 copies of the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice") have been mailed by first-class mail to potential Class Members, brokers, banks and other nominees.[1]  The Notice advised Class Members that Lead Plaintiffs' Counsel would apply for an award of attorneys' fees up to twenty-five percent of the Settlement Fund and reimbursement of expenses of approximately $150,000.  The Notice further provided all Class Members with the opportunity to be heard, to opt out of the Class,

---

[1]     In addition, a summary notice was disseminated on January 13, 2006, in *The Wall Street Journal* as directed in the Preliminary Approval Order.

- 1 -

or to object to the Settlement. *As of the filing of this application, the objection deadline has passed, and no objections to either the proposed Settlement, the Plan of Allocation or to the fee and expense request have been received, and only 11 individuals have requested exclusion from the Class*. The favorable response of the Class supports the reasonableness of the Petitioners' requested fee and expense award.

Given the significant risk of succeeding at trial or on any subsequent appeals, Defendants' expert's position that the Settlement represents more than 100% of their estimate of damages in the case, and the difficulties, generally, in proving liability and damages in a complex securities fraud action, it is respectfully submitted that the recovery of $5,600,000, plus interest, for the benefit of the members of the Class in this action is an excellent result under the circumstances and justifies the request for an award of attorneys' fees in this action. The fee award is also justified by the fact that Lead Plaintiffs' Counsel have prosecuted this action vigorously against Defendants solely on a contingent fee basis and without any compensation for the time and disbursements expended on the case.

The history of the litigation, including Lead Plaintiffs' Counsel's activities and accomplishments therein, the risks undertaken by Lead Plaintiffs' Counsel, and the benefits conferred by the proposed Settlement, are set forth in the accompanying Declaration of Samuel H. Rudman in Support of Lead Plaintiffs' Motion for (1) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (2) Application for an Award of Attorneys' Fees and Reimbursement of Expenses ("Rudman Decl.") and Lead Plaintiffs' Memorandum of Law In Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds. In order to avoid repetition, Petitioners incorporate that detailed discussion herein.

During the course of this litigation, Lead Plaintiffs' Counsel:

1. conducted a preliminary investigation on behalf of Lead Plaintiffs to determine whether there was a cause of action against Defendant Aspen Technologies, Inc. ("AspenTech" or the "Company") and certain of its officers and directors;

2. prepared and filed the initial complaint;

3. communicated with members of the Class concerning the initiation and prosecution of the class action;

4. drafted motions for consolidation and appointment of Lead Plaintiffs;

5. in preparation for filing an amended complaint, Lead Plaintiffs' Counsel conducted further investigation, including the identification, location and interview of witnesses, in addition to examining publicly available records such as AspenTech's public statements and filings with the Securities and Exchange Commission, news stories and analysts' reports;

6. with the help of in-house forensic accountants, drafted and filed the highly detailed consolidated amended complaint, which was filed on August 26, 2005 (hereafter, the "Consolidated Amended Complaint");

7. retained and consulted with a materiality and damages expert;

8. prepared for and participated in a settlement mediation session before Eric Green and held subsequent negotiations with Defendants that resulted in the Settlement; and

9. negotiated terms of the settlement papers presented to the Court.

The fee requested of twenty-five percent of the Settlement Fund is comparable to customary contingent fee arrangements negotiated in non-class actions between attorneys and their clients. It is also well within the range of fees that have been awarded in other class actions under similar circumstances.

## II. THE REQUESTED FEE AND EXPENSE AWARD IS FAIR AND REASONABLE

### A. The Common Fund Doctrine

For over a century, the Supreme Court has recognized the "common fund" exception to the general rule that a litigant bears his or her own attorneys' fees. *Trustees v. Greenough*, 105 U.S. 527 (1882). The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

The common fund doctrine both prevents unjust enrichment and encourages counsel to protect the rights of those who have very small claims. The Supreme Court has emphasized that private actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [Securities and Exchange] Commission action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

The federal courts have therefore long recognized that fee awards encourage the prosecution of actions on behalf of individuals with valid claims, and thereby promote private enforcement of, and compliance with, important areas of federal and state law, including the federal securities laws. *See, e.g., Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 686-87 (M.D. Ala. 1988) ("[C]ourts also have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce the securities laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may

- 4 -

never be paid."); *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992) ("Attorneys who bring class actions are acting as 'private attorneys general' and are vital to the enforcement of the securities laws. Accordingly, public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions.").

In complex securities class actions, competent counsel for plaintiffs can be retained only on a contingent basis. Consequently, a large segment of the public would be denied a remedy for violations of the securities laws if fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the serious risks undertaken, and the delay before any compensation is received.

### B. The First Circuit Has Expressed a Preference for the Percentage of Fund Method in Awarding Fees in Common Fund Cases

Courts generally favor awarding fees from a common fund based upon the percentage-of-the-fund method. *See Blum v. Stenson*, 465 U.S 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995) ("*Thirteen Appeals*") (citing Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, 63-64 (1994)). *See also Nilsen v. York County*, 400 F. Supp. 2d 266, 270 (D. Me. 2005) ("In the First Circuit, courts have discretion to award fees from a common fund 'either on a percentage of the fund basis or by fashioning a lodestar.'") (citation omitted). "As between the two methods, the First Circuit has noted that the percentage-of-funds method is the prevailing practice, and that it may have distinct advantages over the lodestar approach." *Id*. at 270-71.

The First Circuit's most recent pronouncement on the subject is *Thirteen Appeals*. There, the District Court awarded attorneys' fees of 31% of a $220 million settlement fund – *i.e*., roughly $68 million. On appeal, the First Circuit held that "use of the [percentage of fund] method in common

fund cases is the prevailing praxis" based upon the "distinct advantages that the [percentage of fund] method can bring to bear in such cases."  56 F.3d at 307.²

Among the advantages recognized by the court in *Thirteen Appeals*, was the fact that the percentage method is less burdensome to administer than the lodestar method, which "forc[es] the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended."  *Thirteen Appeals*, 56 F.3d at 307.  The court also acknowledged that the "shift in focus lessens the possibility of collateral disputes that might transform the fee proceeding into a second major litigation."  *Id*.  Moreover, the court recognized another important advantage of the percentage method, namely, that, unlike the lodestar method, it does not create a "'disincentive for the early settlement of cases.'"  *Id*.  (citation omitted).

Additionally, the First Circuit in *Thirteen Appeals* noted that the percentage approach promotes more efficient use of attorney time because it is result-oriented.  In contrast, the lodestar method, which is linked to time spent in obtaining a result, creates a disincentive for early settlement of cases and rewards unproductive behavior.  The court recognized that the percentage method also better reflects the market value of counsel's services

> because the [percentage of fund] technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace.  We think that Judge Posner captured the essence of this point when he wrote that "the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character." *In re Cont'l Ill. Sec. Litig*., 962 F.2d 566, 572 (7th Cir. 1992).  In fine, the market pays for the result achieved.

*Id*.

---

²     The First Circuit noted that two Courts of Appeals had expressly **required** the use of percentage awards in common fund cases.  *E.g., Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993). The Third Circuit has expressed a similar view.  *See* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255 (1985), cited in *Thirteen Appeals*, 56 F.3d at 306.

Finally, percentage fee awards in such cases "ensure that those who are engaged in the plaintiff's side of securities litigation are not unduly discouraged from prompt resolution of these cases and full pursuit of the claims of plaintiffs who, absent such counsel, would be unlikely to have any vindication of the rights that they have in this setting." *In re Sequoia Sys. Sec. Litig.*, [1993-1994 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶98,089, at 98,730 (D. Mass. Sept. 10, 1993) (Woodlock, J.).

### C. The Requested Twenty-Five Percent Fee Award Is Well Within the Applicable Range of Percentage of Fund Awards

In selecting an appropriate percentage award, both the United States Supreme Court and the First Circuit have recognized that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Thirteen Appeals*, 56 F.3d at 307; *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992). The ordinary contingency fee arrangement is for one-third of the settlement fund. *See Furtado v. Bishop*, 635 F.2d 915, 917 (1st Cir. 1980); *accord Blum*, 465 U.S. at 903 * ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

Courts in this District and elsewhere frequently award attorneys' fees of thirty percent or more of the settlement fund in securities class actions. *See, e.g.*, *Deckler v. Ionics, Inc., et al.*, No. 03-cv-10393-WGY (D. Mass Apr. 4, 2005) (30% of settlement proceeds), attached hereto; *In re Segue Software, Inc*., No. 99-10891-RGS (D. Mass. July 31, 2001) (Woodlock, J.) (33% of settlement fund); *Wilensky v. Digital Equip. Corp.*, No. 94-10752-JLT (D. Mass. July 11, 2001) (33-1/3% fee awarded on $5.2 million settlement fund); *Chalverus v. Pegasystems, Inc*., No. 97-12570-WGY (D. Mass. Dec. 19, 2000) (33% of $5.25 million awarded); *In re Zoll Med. Corp. Sec. Litig*., No. 94-11579-NG (D. Mass. Oct. 5, 1998) (33-1/3% of settlement); *In re Copley Pharm., Inc. Sec.*

*Litig.*, No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (33-1/3% fee awarded on $6.3 million settlement fund); *In re Picturetel Corp. Sec. Litig.*, No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (one-third of $12 million fund); *Zeid v. Open Env't Corp.*, No. 96-12466-EFH (D. Mass. June 24, 1999) (one-third of $6 million fund); *Morton v. Kurzweil Applied Intelligence, Inc.*, No. 10829-REK (D. Mass. Feb. 4, 1998) (one-third of settlement fund); *In re Bay Fin. Corp. Sec. Litig.*, No. 89-2377-WD (D. Mass. Nov. 4, 1996) (35% of settlement fund); *In re Gillette Sec. Litig.*, No. 88-1858-K (D. Mass. Mar. 30, 1994) (one-third of settlement fund); *Malanka v. de Castro*, No. 85-2154-MC, 1990 U.S. Dist. LEXIS 18171 (D. Mass. Nov. 20, 1990) (one-third of settlement fund); *Margaret Hall Found., Inc. v. Fin. Mgmt., Inc.*, No. 82-2543-S (D. Mass. May 9, 1989) (40% of settlement fund).[3] Petitioners' request for attorneys' fees of twenty-five percent of the Settlement Fund is well within the range of numerous prior percentage awards made in this District and elsewhere.

The fee award sought here would also be consistent with public policy and judicial economy interests that support the expeditious settlement of cases. As noted in *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002):

> [E]fficient prosecution of plaintiffs' claims weighs in favor of a finding of the quality of Plaintiffs' Class Counsel's representation here . . . . "[A] prompt and efficient

---

[3] *See also, e.g., In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494 (D.D.C. 1981) (45% of settlement fund); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195 (S.D.N.Y. 1979) (53.2% of settlement fund), *aff'd*, 622 F.2d 1106 (2d Cir. 1980). *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); *City Nat'l Bank v. Am. Commonwealth Fin. Corp.*, 657 F. Supp. 817 (W.D.N.C. 1987) (one-third of the recovery); *In re Franklin Nat'l Bank Sec. Litig.*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,571 (E.D.N.Y. June 24, 1980) (34% of settlement fund); *Baron v. Commercial & Indus. Bank of Memphis*, [1979-1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,132 (S.D.N.Y. October 3, 1979) (36.5% of settlement fund); *Adams v. Standard Knitting Mills Inc.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,377 (E.D. Tenn. Jan. 6, 1978) (35.15% of settlement fund); *Hwang v. Smith Corona Corp.*, B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund), attached hereto; *In re Employee Benefit Plans Sec. Litig.*, [1993 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,669, at 97,097 (D. Minn. Jun. 2, 1993) (one-third of settlement fund).

> attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." In the context of a complex class action, early settlement has far reaching benefits in the judicial system.

*Id.* at 373 (quoting *McKenzie Constr. Inc. v. Maynard*, 758 F.2d 97, 101-02 (3d Cir. 1985)). *Accord In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 133 (D.N.J. 2002) ("Informal discovery leading to an early settlement that avoids such costs [of formal discovery] favors approval of the fee application."); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *21 (S.D. Cal. Aug. 30, 1990) ("Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements – especially in complex class action cases – should be done.").

Judge David S. Doty of the District of Minnesota recently observed, in *In re Xcel Energy, Inc.,* 364 F. Supp. 2d 980, 992 (D. Minn. 2005), that early settlements are consistent with the purposes of the Federal Rules of Civil Procedure, which "'shall be construed and administered to ensure the ***just, speedy, and inexpensive determination*** of every action.'" (quoting Fed. R. Civ. P. 1) (emphasis in original). "Under Rule 1, as officers of the court, attorneys share the responsibility with the court of ensuring that cases are 'resolved not only fairly, but without undue cost or delay.'" *Id*. (citing Fed. R. Civ. P. 1 Advisory Committee Notes, 1993 Amendments). In awarding a 25% fee on an $80 million settlement (over several objections) the *Xcel* court complimented counsel for the efficient prosecution of the case and the prompt resolution of the litigation. Similarly, in a recent case involving an earnings restatement of $50 million and a shareholder recovery of up to $60 million involving a South Dakota-based utility, Chief Judge Lawrence L. Piersol ruled, in awarding a 23.7% fee negotiated by the lead plaintiffs (an individual and two institutional investors) in a case which settled while the motion to dismiss was pending, "The Court finds that Plaintiffs' counsel competently and vigorously represented the class and proceeded expeditiously to reach a resolution of this action." *In re Northwestern Corp. Sec. Litig.*, No. 03-4049 (D.S.D. Jan. 14, 2005), attached

- 9 -

hereto. Lead Plaintiffs' Counsel have likewise litigated this case efficiently, and, for their efforts, seek approval of a 25% fee.

### D. The Fee Request Is Also Fully Justified Under the Lodestar/Multiplier Approach

The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005). Nevertheless, the requested fee is also reasonable under the lodestar method of analysis. As reflected in the accompanying declarations, Petitioners have devoted 595.45 hours and $225,419.75 in time charges, at current hourly rates,[4] to the prosecution and settlement of this complex litigation. The requested fee amounts to a reasonable multiple of counsel's lodestar.

In reviewing an application for an award of attorneys' fees in a class action, a "risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for their services.'" *Florin v. NationsBank, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) (quoting *Cont'l Ill.*, 962 F.2d at 569). Moreover, as the Seventh Circuit has stated, "[t]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent." *Cont'l Ill.*, 962 F.2d at 569. In this case, Lead Plaintiffs' Counsel's fee award was entirely contingent on whether they successfully prosecuted and/or settled this litigation.

The multiplier reflected here falls within the range of multipliers found reasonable for cross-check purposes by courts throughout the country, and is fully justified here given the effort required,

---

[4] The Supreme Court has held that the use of current rates is proper because those rates more adequately compensate for inflation and loss of use of funds. *Jenkins*, 491 U.S. 274.

the risk faced and overcome and the results achieved. *See*, *e.g.*, *Conley v. Sears Roebuck & Co.*, 222 B.R. 181 (awarding multiplier of 8.9) (D. Mass. 1998); *In re RiteAid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735-36 (E.D. Pa. 2001) (25% fee representing 10.73 multiplier); *In re RJR Nabisco Sec. Litig.*, MDL No. 818, 1992 U.S. Dist. LEXIS 12702, at *22 (S.D.N.Y. Aug. 24, 1992) (approving fees of over $17.7 million, notwithstanding objection that such award of fees represented a multiplier of six); *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (multiplier of 9.3); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (multiplier of 8.74).

Indeed, the very nature of contingent fees means that counsel are taking considerable risks in prosecuting cases on a contingent fee basis. In some cases, counsel are not successful and receive no fee for their efforts. In other cases, counsel receive a fee that is either less than, or approximately equal to their regular time charges, or lodestar. In yet other cases, such as this one, the risk counsel undertakes is rewarded when a reasonable percentage of the recovery provides a fee which is slightly in excess of their time charges.

Finally, the favorable reaction of the Class Members also supports the reasonableness of the fee request. The Notice advised potential Class Members that Lead Plaintiffs' Counsel would apply to the Court for a fee of up to twenty-five percent of the Settlement Fund and reimbursement of expenses of approximately $150,000. No member of the Class has objected to the fee or expense request. Consequently, the favorable reaction of the Class further supports the requested fee award. *See, e.g., Sequoia Sys.*, ¶98,089, at 98,729; *Ressler*, 149 F.R.D. at 656 (a lack of objections is "strong evidence of the propriety and acceptability" of the fee request).

### E.  The Expenses Incurred by Lead Plaintiffs' Counsel Were Reasonable

As demonstrated in the Declaration and Affidavit of plaintiffs' counsel submitted filed herewith, Plaintiffs' Counsel have incurred unreimbursed out-of-pocket expenses of $163,640.65 in successfully prosecuting this action. These expenses included costs for, among other things, filing

fees, service of process, travel, legal research, and copying. A significant portion of the expenses is the cost of Lead Plaintiffs' consultants and investigators. The expenses for which reimbursement is sought herein are the type of expenses for which "the paying, arms' length market" reimburses attorneys, and they are properly chargeable to the settlement fund. *See, e.g., Cont'l Ill.*, 962 F.2d at 570. They are reasonable and necessary within the parameters set by this Circuit. *See In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) (class counsel creating a common fund is entitled to recover "expenses, reasonable in amount, that were necessary to bring the action to a climax").

As noted above, no Class Member has objected to the amount of expenses being sought by Petitioners. The positive reaction of the Class further supports the requested expense award. *See, e.g., Sequoia Sys.*, ¶98,089, at 98,729.

### III.   CONCLUSION

For all of the foregoing reasons, Petitioners respectfully request that the Court award: (i) attorneys' fees of twenty-five percent of the Settlement Fund; and (ii) reimbursement of expenses, in the amount of $163,640.65.

DATED: February 27, 2006                              Respectfully Submitted,

                                                      /s/Theodore M. Hess-Mahan
                                                      Thomas G. Shapiro BBO #454680
                                                      Theodore M. Hess-Mahan BBO #557109
                                                      Shapiro Haber & Urmy LLP
                                                      53 State Street
                                                      Boston, MA  02109
                                                      Telephone:  617/439-3939

                                                      Liaison Counsel

        LERACH COUGHLIN STOIA GELLER
         RUDMAN & ROBBINS LLP
        SAMUEL H. RUDMAN
        DAVID A. ROSENFELD
        MARIO ALBA, JR.
        58 South Service Road, Suite 200
        Melville, NY  11747
        Telephone:  631/367-7100

        LERACH COUGHLIN STOIA GELLER
         RUDMAN & ROBBINS LLP
        WILLIAM S. LERACH
        DARREN J. ROBBINS
        ELLEN GUSIKOFF STEWART
        RAMZI ABADOU
        655 West Broadway, Suite 1900
        San Diego, CA  92101
        Telephone:  619/231-1058

        Lead Plaintiffs' Counsel

## CERTIFICATE OF SERVICE

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 27, 2006.

        **/s/Theodore M. Hess-Mahan**
        Theodore M. Hess-Mahan

- 13 -